## KIRK et al. v. UNITED STATES.

No. 46768.

Court of Claims.

June 1, 1948.

Robert R. Faulkner, of Washington, D. C., for plaintiff.

Grover C. Sherrod, of Washington, D. C. and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and WHITAKER, HOWELL, MADDEN, and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiffs sue for additional costs to which they allege the contractor, Harold R. Kirk, was put by reason of the Government's unreasonable delay in notifying him of its action on his proposal for the making of certain changes in the plans and specifications.

The contractor entered into a contract with the Government for the erection of an equipment repair building at Fairfield Air Depot, Patterson Field, Dayton, Ohio. The building consisted of a basement and two floors above. The specifications called for a structural steel framework, and with brick walls on the exterior above the basement. In place of glass windows, the specifications called for glass blocks in all window openings.

After the contractor had done the required excavation and had erected a portion of the basement walls, defendant's representative notified him that the Government contemplated making major changes in the drawings and specifications. This was about the middle of August 1940. On August 29, 1940, the constructing quartermaster sent the contractor the revised drawings and specifications and asked for a proposal for doing the additional work.

The new specifications called for a concrete vault on the second floor of the building for the storage of bomb sights. This vault was designed to have eight-inch concrete walls with layers of steel on each face of the walls. It occupied about one-fourth of the second floor. The additional weight of this proposed vault required a change from 12-inch steel beams, as originally specified, to 24-inch steel beams.

This change necessitated suspension of all work on the exterior walls of the building until the defendant had acted on the contractor's proposal for making the change. In article 5 the contract provided: "Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order." In view of this provision of the contract, the contractor could not proceed with the work until after his proposal for doing the work had been approved by the contracting officer.

The contractor submitted his proposal on September 12, 1940. After waiting for about 8 days for action on it, he called on the constructing quartermaster to find out what the Government was going to do about it, and he continued to do so until finally on November 2, 1940 the constructing quartermaster phoned the contracting officer in Washington, D. C., and then for the first time learned that the contractor's proposal had been accepted on September 18, 1940. For some unexplained reason neither the constructing quartermaster nor the contractor had been notified thereof. We have found that by the exercise of reasonable diligence the contractor should have been notified by the contracting officer of his action on his proposal not later than September 25, 1940. Not having been notified until November 2, 1940, there was thus an unreasonable delay on the part of defendant of 38 days.

Plaintiffs say that this unreasonable delay increased the contractor's costs by the amount of $1,986.02, which is the additional cost of installing the glass blocks in the window openings in cold weather over what it would have cost to install these blocks in warm weather. There is no dispute as to the amount of this additional cost. It was necessary for the contrac-

tor to cover the scaffolding on the outside of the building with canvas, and to supply artificial heat to permit the workmen installing the blocks to work in the cold weather and to keep the mortar from freezing. This and other things, admittedly, increased the contractor's costs of installing these blocks by the amount claimed.

According to the contractor's progress schedule filed with the contracting officer, these blocks would have been installed by December 1, 1940, had the change not been made, and we have found that, in fact, these blocks would have been installed by December 15 had the change not been made. As a result of the change and the unreasonable delay in acting on the contractor's proposal, they were actually installed in the latter part of December and in January of 1941. No work on the outside walls could be done until the size of the steel beams had been decided upon and these beams had been installed. The glass blocks, therefore, had to be installed in below-freezing weather, whereas, except for the unreasonable delay, they would have been installed in weather above freezing.

There having been an unreasonable delay of 38 days in acting on the contractor's proposal, and the work having been completed in January 1941, it seems necessarily to follow that except for this delay the work would have been completed 38 days earlier, or sometime in December 1940. The proof shows that the freezing weather began in the latter part of December or the first of January.

Defendant's unreasonable delay, therefore, caused the contractor this additional expense.

At the time the contractor submitted his proposal he asked for $5.00 a thousand additional cost of doing the exterior brick work by reason of the fact that this would have to be done in cold weather. The contracting officer allowed this. The contractor did not ask for the additional cost of installing the glass blocks in cold weather. This was for the reason that the contractor expected to do this work in the spring. To make this possible he requested an extension of time of 60 days because of the delay due to the change. He assumed, naturally enough, that this extension would be granted, as was contemplated under article 3 of the contract. Had additional time been granted, the contractor could have deferred the installation of these glass blocks until the spring and could have installed them then without any additional cost.

However, notwithstanding the provisions of article 3 reading, "if such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly"—notwithstanding this, the contracting officer refused to grant any additional time. He refused to grant additional time, notwithstanding the normal delay incident to the making of the change, and notwithstanding, moreover, the Government's negligence in notifying the contractor of the acceptance of his proposal for the making of the change. That the contractor was entitled to an extension of time, there would seem to be no doubt, and it was the contracting officer's duty under article 3 to grant the additional time, both in view of the change and especially in view of the Government's negligence in notifying the contractor of its action on his proposal. Had this extension been granted, the contractor could have erected these glass blocks in warm weather and, if so, his costs would not have been increased.

Judgment will be entered in plaintiffs' favor in the amount of $1,986.02, which is the increase in the actual cost incurred in the erection of these glass blocks in cold weather plus an allowance of 7 percent for overhead. Plaintiffs originally claimed an additional allowance for profit, but in their brief they properly abandon this part of the claim.

It is so ordered.

HOWELL, MADDEN, and LITTLETON, Judges, and JONES, Chief Justice, concur.